Daniel P. Struck, Bar No. 012377
Jennifer L. Holsman, Bar No. 022787
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona  85012
Telephone: (602) 263-7310
Fax: (602) 200-7811
dstruck@jshfirm.com
jholsman@jshfirm.com

Michael D. Corey
SANDBERG, WUESTENFELD & COREY
ABA #8511130
701 W. 8th Avenue, Suite 1100
Anchorage, Alaska 99501
Telephone: 907-276-6363

*Attorneys for Defendants, Corrections Corporation of America*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| William R. Bailey,<br><br>                                    Plaintiff,<br><br>        v.<br><br>Corrections Corporation of America, et al,<br><br>                                    Defendants, | Case No. A05-0172 CIV<br><br>(The Honorable William F. Morse) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff alleges that he was "too hot" in a transport van while being transported from a hospital to Florence Correctional Center ("FCC").  After reaching the facility, Plaintiff received prompt treatment for his alleged "symptoms" and was found to be asymptomatic.  Plaintiff now alleges that Defendants, not  present or involved with the alleged injuries he suffered, were "deliberately indifferent" to his medical needs on May

29, 2003.  Defendants deny liability or damages.

Defendants State of Alaska, Mike Addington, Corrections Corporation of America, Frank Luna, Karl Stansel, Dr. Rebecca Bingham, Kenneth Braz, Clifford Simons and David Norcross, submit this Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.  Defendants are entitled to judgment as a matter of law on both of Plaintiff's claims because: (1) applying choice of law principles, Plaintiff is not and cannot be a third party beneficiary of the contract as he alleges and cannot therefore assert a claim for alleged breach of contract under Alaska law; (2) Plaintiff cannot establish a prima facie case for his "deliberate indifference" claims against Defendants; (3) Plaintiff cannot establish a prima face case for his *Monell* claim; and (4) Plaintiff is not entitled to punitive damages.  Accordingly, Defendants respectfully request this Court grant summary judgment in their favor.

This motion is supported by the attached Memorandum of Points and Authorities, separate statement of facts, the exhibits attached thereto and the entire record in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    FACTUAL BACKGROUND.

The Alaska Department of Corrections ("ADOC") has a contract with Corrections Corporation of America ("CCA"), to house Alaskan inmates in Arizona facilities. (See Defendants' Statement of Facts in Support of their Motion for Summary Judgment, "DSOF" at ¶ 1). As a result of the contract between ADOC and CCA, Plaintiff was transferred to FCC, a facility operated by CCA. (DSOF at ¶ 2).

Plaintiff asserts that on or about May 28, 2003, he was transported to a local hospital after complaining of chest discomfort and palpitations.  (DSOF at ¶ 3).  After an overnight stay in the hospital, Plaintiff was transported back to FCC on May 29, 2003.

1    (DSOF at ¶ 4).

2    During the transport back to FCC, Plaintiff alleges that the van he was

3    traveling in was too hot.  (DSOF at ¶ 5). Allegedly, because the temperature was warm, he

4    began feeling weak and dizzy. (DSOF at ¶ 6). Plaintiff alleges that he also "dry-heaved"

5    and "fell unconscious." (DSOF at ¶ 7).

6    Upon arriving to the facility, Plaintiff was taken to the medical unit where

7    he received medical care and found to be "asymptomatic." (DSOF at ¶ 8).  Plaintiff did

8    not have any follow up treatment, as none was requested and none was needed. (DSOF at

9    ¶ 9).

10    On May 25, 2005, Plaintiff filed a Complaint against the Defendants

11    alleging: (1) a *Monell* claim against Mike Addington, Ken Braz, Dr. Rebecca Bingham,

12    Clifford Simons and David Norcross for creating a "dangerous environment"; (2)

13    deliberate indifference to medical care, an alleged violation of his Eighth Amendment

14    rights, against Frank Luna, Karl Stansel and Corrections Corporation of America; (3)

15    deliberate indifference to medical care against Clifford Simons for "failing to act to ensure

16    that plaintiff's medical condition was properly included in the transfer packet; (4) a breach

17    of contract claim against the Defendants, which was an alleged violation of Plaintiff's

18    Fourteenth Amendment rights; and (5) a deliberate indifference claim against David

19    Norcross and Dr. Bingham for failing to adequately fill out the medical summary for

20    prisoner transfers form or exclude Plaintiff from transfer to Arizona.[1] (DSOF at ¶ 10).

21    Plaintiff seeks compensatory punitive damages. (DSOF at ¶ 11).

22    As outlined below, Plaintiff is unable to establish a prima facie case on his

23    breach of contract, deliberate indifference to medical needs, *Monell* or punitive damages

24

25    [1] Plaintiff asserts that his claims fall under the Fourteenth Amendment. Because Plaintiff was a sentenced prisoner, however, his claims for deliberate indifference fall under the purview of the Eighth Amendment.

26    Regardless, the analysis for claims under the Eighth and Fourteenth Amendments is the same.

claims against these named Defendants. Accordingly, Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

## II.     LEGAL ARGUMENT.

### A.     Choice of Law Requires the Court to Apply Alaska law to Plaintiff's Breach of Contract Claim.

The Court must apply the choice of law rules of the state in which it sits to determine which substantive law to apply to Plaintiff's claims. When deciding choice of law issues, Alaska has applied the Restatement (Second) of Conflict of Laws.[2] Pursuant to Alaska choice of law principles, Alaska law must be applied to Plaintiff's breach of contract claim.

Under the choice of law provisions for contractual disputes, section 187 of the Restatement (Second) of Conflict of Laws states that:

1.     The law of the state chosen by the parties to govern their contractual          rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."

2.     The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(A)     the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or,

---

[2]  *Long v. Holland America Line Westours, Inc.*, 26 P.3d 430 (Alaska2001); *Palmer G. Lewis Co. v. ARCO Chemical Co.*, 904 P.2d 1221, 1227 (Alaska 1995) ("When choice of law issues arise, we commonly refer to the Restatement (Second) of Conflicts for guidance.")

4

> (B)     application of the law of the chosen state would be contract to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[3]

In this case, the contract between CCA and ADOC contains a choice of law provision. The contract specifically states: "This contract is governed by the laws of the State of Alaska.  All actions concerning this contract shall be brought in the Superior Court of the State of Alaska."[4] The parties to the contract clearly intended for Alaska law to govern any contractual disputes. As a result, this Court must apply Alaska law to the breach of contract claims asserted by Plaintiff pursuant to the choice of law provision agreed to by the parties to the contract, the Restatement (Second) of Conflicts and Alaska case law.

**B.     Plaintiff's Breach Of Contract Claim Fails As a Matter of Law.**

Plaintiff's Fourth Cause of Action, appears to be a breach of contract claim pursuant to Alaska Statute 33.30.031(2), Contracts for Confinement and Care of Prisoners states. Plaintiff appears to be making a third party beneficiary claim under the Alaska statute that provides for the Alaska Department of Corrections Commissioner to enter into contracts for the care and confinement of prisoners.

It is well settled that a person not a party to a contract cannot sue for breach of contract. Although Plaintiff alleges that he is a third party beneficiary to the contract

---

[3]  *See* contract between Alaska Department of Corrections and Corrections Corporation of America, page 9, attached hereto as Exhibit 1.

[4]  *See Hertz v. State*, 22 P.3d 895 (Alaska App. 2001) (finding that Alaska had maintained jurisdiction over inmates transferred to CADC due to the contractual requirements between CCA and ADOC).

1  between ADOC and CCA, he fails to allege or provide evidence that he actually is a party
2  to the contract. Because Plaintiff is not a party to the contract, Defendants are entitled to
3  judgment as a matter of law.

4         To bestow third-party beneficiary stature on a third-party status, the original
5  contracting parties must have intended their contract to benefit the third-party claimant.[5]
6  Generally, a party contracting with the government is not liable to members of the public
7  because, unless the parties manifest a different intent within the contract, they are merely
8  incidental beneficiaries.[6]  Evidence of mere intent to benefit some third party is not
9  enough; there must be affirmative language in the contract demonstrating the contracting
10 parties' intent that the promisor will be held liable to specific third parties in the event of
11 nonperformance.[7]  Moreover, several courts, including Alaska Federal Court, have
12 recognized that inmates are not third party beneficiaries to contracts related to their
13 incarceration.[8]

14        In this case, CCA and the State of Alaska entered into a contract for the
15 housing of Alaskan inmates at the Florence Correctional Center in Florence, Arizona.
16 There is no contract provision relating to CCA's liability to inmates for breach. There also
17 is no language which manifests a clear intent that inmates be designated as third party

18  ------------------------------
19  [5]   *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997);  *Kodiak Elec. Ass'n v. DeLaval Turbine, Inc.*, 694 P.2d 150, 154 (Alaska 1984); *State v. Osborne*, 607 P.2d 369, 371 (Alaska 1980).

20  [6]   *Nguyen v. United States Catholic Conf.*, 548 F. Supp.  1333 (W.D. Pa. 1982), *aff'd.*, 719 F.2d 52 (3rd
21  Cir. 1983); *Drummond v. University of PA*, 651 A.2d 572, 578 (Pa. 1994); Restatement (Second) of Contracts § 313(2)(a).

22
23  [7]   *Drummond*, 651 A.2d at 579.

24  [8]   *See Miller v. Corrections Corporation of America, 375 F.Supp 2d. 889 (2005); Johnson v. Lark*, 365 F.
25  Supp. 289 (E.D. Mo. 1973); *Clifton v. Suburban Cable TV Co. Inc.*, 642 A.2d 512 (Pa.), *cert. denied*, 115 U.S. 1152 (1994).

26

1
2
beneficiaries to the contract. Accordingly, Plaintiff is at best only an incidental beneficiary to the contract and has no right to seek enforcement for damages.

3
4
5
6
7
8
9
10
11
Finally, there are strong public policy reasons for denying Plaintiff's third party beneficiary claim. Having committed a serious violation of criminal law, Plaintiff should not be able to assert that any aspect of his incarceration was intended for his benefit. His incarceration was intended to benefit the public at large by isolating him from society, deterring future misconduct, and obtaining retribution on behalf of his victim. Further, allowing inmates to interfere in the performance of the contract would permit convicted felons to manipulate public policy choices reflected in the government's decisions about enforcement of its right under a major public contract. Therefore, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

12
13
### D.    Plaintiff Cannot Make a Prima Facie Showing of Deliberate Indifference to Medical Needs.

14
15
16
To state a valid 42 U.S.C. §1983 claim, Plaintiff must establish that he suffered specific injury as a result of the specific conduct of the Defendants, and show an affirmative link between the injury and the conduct of the Defendants.[9]

17
18
19
20
21
22
Additionally, liability under 42 U.S.C. § 1983 cannot be predicated on the theory of *respondeat superior*.[10]   "A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."[11]   Consequently, a supervisor can only be personally liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," in violation of, or in callous disregard for the

23
24
[9] *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S.Ct. 598, 604-05, 607 (1976). It appears that Plaintiff has made a "deliberate indifference" claim in Counts 2, 3 and 5.

25
[10] *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

26
[11] *Id.*; *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

rights of others.[12]  Mere negligence in supervision is not enough to impose liability.  To be actionable under § 1983, a supervisor's failure to adequately supervise or train must rise to the level of "deliberate indifference" to the rights of others.[13]

In this case, Plaintiff is unable to specifically connect any alleged wrongful conduct to any of the named Defendants, which resulted in specific harm to Plaintiff. Plaintiff similarly is unable to show an affirmative link between the injury and the Defendants conduct.  Plaintiff's Complaint states that:

- Defendants Luna, Stansel and CCA subjected Plaintiff to a dangerous environment that Defendants knew to be dangerous when they "put plaintiff in a (sic) unsafe cargo van that was poorly ventilated and lacked a working air-conditioning system."[14]

- Defendant Simons was "deliberately indifferent to plaintiff (sic) serious medical condition. In that defendant had a affirmative duty to plaintiff's safety thus failing to act to ensure that plaintiff's medical condition was properly included in the transfer packet."[15]

- Defendant Bingham and Norcross failed to "adequately fill out the medical summary for prisoner transfers from 807.14E or, medically exclude plaintiff to such placement due to plaintiff's serious medical condition resulted in plaintiff's foreseeable injuries…all in violation of the 8th Amendment of the U.S. Const."[16]

Yet, Plaintiff's Complaint fails to outline <u>any</u> action by the named Defendants that was actually "deliberately indifferent" to his medical care on May 29, 2003 or thereafter.  In fact, Plaintiff is unable to connect any of the wrongs he alleges to any of the Defendants.  It is undisputed, however that the named Defendants did not

---

[12] *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991).

[13] *See City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989).

[14] Count 2, Plaintiff's Complaint, page 8.

[15] Count 3, Plaintiff's Complaint, page 8.

[16] Count 5, Plaintiff's Complaint, page 9.

1    personally participate in Plaintiff's medical care.  Nor did any of the named Defendants

2    act or fail to act to intentionally deny, delay or otherwise interfere with Plaintiff's

3    prescribed medical care, resulting in injury to Plaintiff. Neither can Plaintiff mount any

4    evidence to establish that the Defendants trained or failed to train FCC medical personnel

5    which resulted in a custom, policy or practice of deliberate indifference to inmates'

6    medical needs, which in turn caused injury to Plaintiff.

7          In sum, here Plaintiff cannot establish that the named Defendants were aware

8    of Plaintiff's medical condition in the first place or personally participated in the alleged

9    denial of Plaintiff's medical care on May 29, 2003.  Plaintiff is also without evidence that

10   the Defendants directed others to deprive Plaintiff of necessary medical care or facilitated

11   a custom, policy or practice of deliberate indifference to inmates' serious medical needs,

12   resulting in injury to Plaintiff.

13         Because Plaintiff is unable to establish a prima facie case of deliberate

14   indifference to his medical care, these named Defendants are entitled to judgment as a

15   matter of law.

16         **E.     Alternatively, Plaintiff's Deliberate Indifference Claim Fails.**

17         To establish a constitutional violation based on inadequate medical care, an

18   inmate must present facts or omissions sufficiently harmful to evidence deliberate

19   indifference to serious medical needs.[17]  The inmate must allege more than "an inadvertent

20   failure to provide adequate medical care." Id.   Rather, to be actionable, the alleged

21   conduct must be such that it is "repugnant to the conscious of mankind" or "incompatible

22   with the 'evolving standards' of progress in a maturing society."[18]  Indeed, the United

23   States Supreme Court has held that a prison official cannot be found liable under the

24   Eighth Amendment for denying an inmate medical care unless the official consciously

25   _____
     [17] See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

26   [18] Id. at 102, 105.

9

1    knows of and intentionally disregards an excessive risk to inmate health or safety. The
2    official must be aware of facts from which the inference could be drawn that a substantial
3    risk of serious harm exists, and he must also draw the inference.[19]  Thus, for liability to
4    exist, the inmate's medical need must be "objectively, sufficiently serious," and the failure
5    to treat that medical condition must constitute the "denial of the minimal civilized
6    measure of life's necessities."[20]

7    Moreover, a mere delay in medical care, without more, is insufficient to
8    state a claim against prison officials for deliberate indifference.[21]  Thus, mere claims of
9    inadvertence, negligence, or even medical malpractice do not support a claim under 42
10   U.S.C. § 1983.[22]  Furthermore, a plaintiff must also prove that alleged deliberate
11   indifference to serious medical needs by correctional/medical officials caused injury to the
12   plaintiff, worsened an existing condition or adversely affected a prognosis.[23]

13   In this case, Plaintiff claims that the Defendants were deliberately
14   indifferent to his medical needs when he was placed in a van that was "too hot" and that
15   he suffered injuries as a result. Plaintiff received prompt medical care immediately upon
16   returning to FCC. In fact, Plaintiff admitted during his deposition that:

17   | Question (Ms. Holsman): | Did you then seek medical treatment related to the May 29, 2003 incident? |
18

19   | Answer (Plaintiff): | I have a number of questions about that, Ms. Holsman, yes. |
20

21   | Question: | You went there May 29, 2003, received about 20 minutes to 30 minutes of care and you returned |
22

---

[19] *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994).

[20] *Id.* at 834, 114 S.Ct. at 1977.

[21] *See May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980).

[22] *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[23] *See Miller v. Michigan Dept. of Corrections Health Care Providers*, 986 F. Supp. 1078, 1081 (W.D. Mich. 1997); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997).

1          back for a follow-up a couple of days later?

2          Answer:                    Yes.[24]

3          As outlined, Plaintiff received prompt medical attention after complaining

4   of symptoms associated with the transport van being too hot.

5          Plaintiff's claim that he was deprived of even minimal medical care for his

6   previous leg fracture is without support.

7          Finally, there is no dispute that Plaintiff has never been told by any

8   physician that the care or alleged lack of care by the FCC medical department has *caused*

9   or aggravated injury to Plaintiff.  Instead, Dr. John O'Steen, Defendants' expert, opined

10  that "following this second alleged event, which does not seem to have occurred as Mr.

11  Bailey described it, he continued to receive adequate and appropriate health care at FCC

12  in Arizona which clearly met the Standard of Care for this locale and this is well

13  documented in his medical record."[25]  Thus, Plaintiff's "deliberate indifference" claim

14  lacks any merit and is not supported by the evidence.

15         In addition, Plaintiff's disagreement with the type and course of medical

16  treatment provided to him while at FCC is not actionable under the Eighth Amendment as

17  such constitutes, at best, a medical negligence claim.  Plaintiff would not be able to

18  prevail on his negligence claim, however, because he failed to produce any expert

19  testimony regarding duty, breach of duty, causation or damages.

20         Because it is undisputed that Plaintiff received medical treatment at FCC,

21  and because Plaintiff will be unable to present any evidence that the alleged lack of care

22  caused an aggravation of his existing condition or other residual physical damage,

23  Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate

24

25  [24] Page 62 of Plaintiff's Complaint, attached hereto as Exhibit 3.

26  [25] *See* Dr. O'Steene's Expert Report, attached as Exhibit 2 to Defendants' Separate Statement of Facts.

11

1  indifference to medical needs claim.

2  **F.     No *Monell* Liability.**

3          Plaintiff can only recover on his First Claim if he proves that the challenged

4  action was part of an unconstitutional municipal policy or custom.[26]  To establish a policy

5  or custom, Plaintiff must show that a municipal decision maker with "final policymaking

6  authority" approved the challenged action.[27]  It is not enough to show that policymakers

7  should have been aware of an unconstitutional condition.  Rather, the custom or policy

8  must have resulted from a conscious or deliberate choice of action.  As the Supreme Court

9  has noted:

10              [M]unicipal liability under Section 1983 attaches where -- and
                only where -- a deliberate choice to follow a course of action
11              is made from among various alternatives by the official or
                officials responsible for establishing final policy with respect
12              to the subject matter in question.[28]

13          There is no evidence here of an unconstitutional policy or custom.  Neither

14  the State of Alaska, CCA, or any other authorized policymaker made the "deliberate

15  choice" to "create a dangerous environment" for the Plaintiff.  Because Plaintiff will be

16  unable to establish an unconstitutional policy or custom by the Defendants, Defendants

17  are entitled to judgment as a matter of law.

18  **G.     No Punitive Damages.**

19          To recover punitive damages in a Section 1983 claim, Plaintiff must show

20  that: (1) the Defendants' conduct was driven by evil motive or intent or (2) the conduct

21  was reckless or callous indifference to the plaintiff's constitutional rights.[29]  In this case

22  [26] *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (2001).

23  [27] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83, 106 S. Ct. 1292, 1299-1300 (1986).

24  [28] *Pembaur*, 475 U.S. at 483, 106 S. Ct. at 1300.  *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985) ("the word 'policy' generally implies a course of action consciously

25  chosen from among various alternatives").

26  [29] *See Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993) (*citing Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983).

1    Plaintiff cannot make the proper showing to recover punitive damages.  As set forth

2    throughout this Motion, at no time did the Defendants act with evil motive or intent, or

3    recklessly or with callous indifference to Plaintiff's Constitutional rights.  Therefore,

4    Defendants are entitled to summary judgment on Plaintiff's punitive damages claim.

5    **III.    CONCLUSION.**

6          Defendants respectfully request that their Motion for Summary Judgment be

7    granted because: (1) applying choice of law principles, Plaintiff is not and cannot be a

8    third party beneficiary of the contract as he alleges and cannot therefore assert a claim for

9    alleged breach of contract under Alaska law; (2) Plaintiff cannot establish a prima facie

10   case for his "deliberate indifference" claims against Defendants; (3) Plaintiff cannot

11   establish a prima face case for his *Monell* claim; and (4) Plaintiff is not entitled to punitive

12   damages.

13          DATED this 18th day of September, 2006.

14                                JONES, SKELTON & HOCHULI, P.L.C.

16                          BY_____
                                Daniel P. Struck, Bar No. 012377
17                              Jennifer L. Holsman, Bar No. 022787
                                Jones, Skelton & Hochuli, P.L.C.
18                              2901 North Central Avenue, Suite 800
                                Phoenix, Arizona  85012
19
                                Michael D. Corey
20                              SANDBERG, WUESTENFELD &
                                COREY
21                              ABA #8511130
                                701 W. 8th Avenue, Suite 1100
22                              Anchorage, Alaska 99501
                                Phone: 907-276-6363
23
                                *Attorneys for Defendants, Corrections*
24                              *Corporation of America*

25   Original e-filed with the
     Court this 18th day of September, 2006.
26

13

COPY mailed the same day to:

William R. Bailey
#25590
Springcreek Correctional Center
PO Box 5001
Seward, Alaska, 99664
*Plaintiff Pro Se*

_____