EXHIBIT 1
SIGNED/NOTARIZED EXPERT REPORT OF
JON O'STEEN

John O'Steen, M.D.
1155 N. Pinal Parkway
Florence, Arizona 85232

**RECEIVED**

**AUG 16 2006**

**JLH**

April 16, 2006

Jennifer L. Holsman
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, suite 800
Phoenix, Arizona 85012

RE: William R. Bailey v. CCA, etal
William R. Bailey v. CCA & Luna

Dear Ms. Holsman:

Recently I have had the opportunity to review numerous documents concerning the above referenced cases filed by Mr. William R. Bailey. The items submitted to me by your firm are well delineated in your correspondence to me dated March 30, 2006.

Mr. Bailey claims that shortly after his incarceration at CCA's Florence Correctional Center in March of 2003, he was told by a provider that the Relafen he was previously taking for his arthritis was not available and Clinoril would be substituted. He asserts that when he picked up his new arthritis medication he was inadvertently given another Inmate's medication for Lovastatin, a cholesterol lowering medication, which he took for ten days before discovering the error. He alleges that he developed severe nausea, dizziness, abdominal cramping and heart palpitations as a result.

Medications at CCA facilities are prepared by Diamond Pharmaceutical Company and are blister pacs clearly marked with the individuals full name and identification number. The Inmates are required to sign for and acknowledge receipt of the medications which are dispensed by licensed nursing staff. Clearly, the Inmates have a personal responsibility to verify the identification on the card and the medications contained within the card before ingesting them. To not do so would be negligence on their part.

Shortly thereafter the Inmate was seen by Dr. Singh, a licensed physician at the facility, and was examined with no significant abnormal findings other than mild elevation in his blood pressure. Mr. Bailey was reassured by Dr. Singh and told that this was "an innocent harmless mistake." Mr. Bailey remained at this facility throughout the

remainder of the year. He was seen numerous times for multiple different complaints and was transported to the hospital where he received an extensive medical evaluation twice for complaints of chest pain. He never again voiced any complaints that could be associated in any way with this alleged 10 day ingestion of Lovastatin and no testing suggested an adverse impact on Mr. Bailey from this medication. There is nothing in this medical record that would suggest Mr. Bailey suffered any serious or prolonged adverse effects from this event. If this event occurred, it was indeed relatively harmless as indicated by Dr. Singh. The evaluations by the Health Care Providers of this individual during this period clearly met the Standard of Care.

Further, even if he received this medication card for Lovastatin there is no evidence that he actually took them. In a request for interview submitted to the Alaska Department of Corrections dated 2/15/03 prior to his transfer to Arizona he was clearly displeased about the transfer, predicted that his medical needs would not be met in Arizona and closed the request with the statement, "see you in court." Review of the medical record showed that Mr. Bailey had been on multiple medications for greater than 20 years and seemed well versed in his medication regimen.

Subsequent to this event the Inmate was ordered transported to the hospital via ambulance for evaluation of chest pain on May 28, 2003. The Inmate alleges that on his return to the prison by facility van the following day the air conditioning unit was not properly functioning and that he became quite ill, eventually sustaining a syncopal episode witnessed by a Lieutenant at the facility. He stated that the correctional officers transporting him knew of his serious medical condition and should have taken action to ensure that he did not become overheated. Interestingly, the medical record shows that he was seen on the day of his return form the hospital by Mr. Green, a Physician's Assistant, who reported Mr. Bailey was " asymptomatic." Had such a syncopal episode occurred in the reception area a medical emergency would have been called and he would have been transported to the medical unit on a stretcher for immediate evaluation. This does not seem to have occurred.

It should be noted that Mr. Bailey's complaints have been quite consistent over the past twenty plus years. He tends to complain of chest pain, palpitations, left testicular pain, low back pain and bilateral knee pain. He has been admitted to the hospital on more than four occasions for evaluation of chest pain since 1985 and no serious heart condition has ever been found. During his last admission in Arizona it was pointed out that his chest pain was felt to be non-cardiac in origin. Mr. Bailey is either prone to hyperbole or alternatively chooses to distort the truth for his own benefit.

This is further substantiated by his reluctance to release his previous medical records which showed a clear pattern of prescription drug abuse and cocaine abuse as late as 2001. He was dismissed from the care of his attending Physician, Dr. Ticman, in August 2001 when his second drug screen in three months came back positive for opioids and cocaine. Such individuals are often known to be deceptive and manipulative. He also failed to disclose to the health care providers in Arizona that he was Hepatitis C positive,

a condition often associated with drug abuse.

Following this second alleged event, which does not seem to have occurred as Mr. Bailey described it, he continued to receive adequate and appropriate health care at FCC in Arizona which clearly met the Standard of Care for this locale and this is well documented in his medical record.

If you should have any further questions concerning this matter feel free to contact me at any time.

Respectfully Yours,

*[signature]* MD

John O'Steen, M.D.

OFFICIAL SEAL
JODI A. MORRISON
Notary Public - State of Arizona
PINAL COUNTY
My Comm. Expires July 8, 2008

*[notary signature]*